Below is an opinion of the court.

_____
THOMAS M. RENN
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re<br><br>DAVID SETH SMITH and<br>TINA LYNN CLARK,<br><br>Debtors. | Case No. 17-62884-tmr7 |
| DAVID SETH SMITH,<br><br>Plaintiff,<br><br>v.<br><br>DEPARTMENT OF EDUCATION,<br><br>Defendant. | Adv. Proc. No. 17-6086-tmr<br><br>OPINION |

Plaintiff filed this adversary proceeding to obtain a determination that his debt to Defendant, the United States Department of Education, for a loan consolidating several educational loans is dischargeable under 11 U.S.C. § 523(a)(8).[1] The parties presented evidence at trial on April 16, 2019. Following closing arguments, I asked Defendant to file a supplemental brief regarding Plaintiff's status in his income-based repayment plan (IBRP), as

---

[1] Unless otherwise indicated, all subsequent statutory references are to Title 11 of the United States Code.

Page 1 of 12 – OPINION

well as Defendant's position on whether the court has the power to prevent Plaintiff from seeking a Parent Plus Loan from Defendant following entry of an order discharging his personal student loans. Defendant filed a Supplemental Trial Brief (Doc. #46), and Plaintiff declined to respond. The record is complete, and I am ready to rule. For the reasons outlined below, I hold that repayment of the debt to Defendant would impose an "undue hardship" on Plaintiff within the meaning of § 523(a)(8), and that he is entitled to a bankruptcy discharge of his student loan.

## Procedural and Factual Background

Plaintiff filed his Chapter 7 bankruptcy case on September 21, 2017. He filed his adversary Complaint on November 6, 2017, seeking a discharge of his debt to Defendant. The parties agree that there is only one loan at issue, a consolidated loan with a balance of $49,999.71 as of November 27, 2018. They also agree that the debt qualifies as an "educational loan" within the meaning of § 523(a)(8)(A). The following facts are either stipulated to by the parties or were undisputed at trial.

Plaintiff attended college from 1981 to 1984, incurring student loan debt to pay for the cost of his education. He dropped out of school prior to completing his degree. In the following years, Plaintiff held numerous jobs, most involving manual labor in various service industries. He consolidated his student loans in 1995. Except for a few years in the 1990s during which Plaintiff earned additional funds fixing up and selling houses, Plaintiff and his spouse earned minimal income and were often unable to satisfy their own and their dependents' living expenses.

Plaintiff testified that, for the past several years, he and his spouse grossed no more than $30,000 to $34,000 per year, most of it from his wife's Pilates business. His Statement of Financial Affairs (part of Doc. #1; Bankruptcy Case No. 17-62884-tmr7), included in the record at trial, reflects the following gross income for 2015 through 2017:

| Tax Year: | Income from Plaintiff: | Income from spouse: | Total household income: |
|---|---|---|---|
| 2017 | $2,400 | $12,000 | $14,400 |
| 2016 | $4,200 | $22,500 | $26,700 |
| 2015 | $5,800 | $21,090 | $26,890 |

Page 2 of 12 – OPINION

At the time of the trial, Plaintiff was 58 years old and did not have wage income or receive disability or government benefits. His Schedules I and J (part of Doc. #1; Bankruptcy Case No. 17-62884-tmr7), included in the record at trial, outlined his income and expenses as of the date he filed his bankruptcy case. Schedule I includes $350 in "digital marketing" self-employment income. Plaintiff described this income as a form of royalty payment related to small, informational booklets he wrote and sold on Amazon.com. Although he had modest success with the booklets, Amazon changed its policies regarding such publications, and he can no longer generate a profit. He currently receives about $15-$20 per month in royalties and has no other income. Schedule I also shows $1,500 in monthly income from his spouse's Pilates business. She currently makes about $3,000 per month, bringing their total household income to $3,020 ($3,000 + $20).

Turning to Plaintiff's expenses, he has three children, two of whom reside with him. None of the children financially contribute. The family lives in a home provided to them by Plaintiff's mother. Although they were not paying rent to her at the time they filed their bankruptcy case, he and his spouse now pay rent of $1,000 per month and do additional work around the house to help maintain it. Schedule J lists $2,020 total for other household expenses. Aside from the new rent payment and a $300 increase in the food expense ($900 increased to $1,200), the remainder of the expenses have not materially changed, thus bringing the total average monthly expenses to $3,320.

Ever since his student loan became payable, Plaintiff has participated in either income-based repayment or forbearance programs. His current IBRP has 24 years remaining. Given his current income, he is not obligated to make any payments and receives no collection notices. To date, he has paid only $5.76 toward the debt.

In support of his claim for dischargeability, Plaintiff asserts that his current physical and mental conditions prevent him from obtaining employment and income to repay his loans. He has been diagnosed with persistent atrial fibrillation (AFIB), anxiety and depressive disorders,

Page 3 of 12 – OPINION

Case 17-06086-tmr    Doc 47    Filed 09/17/19

and asthma.[2] Most of his work experience is in carpentry, but since developing a heart condition, he cannot safely maintain a job doing this type of work. Plaintiff suffers from palpitations and an elevated heart rate, making it difficult and potentially dangerous for him to do manual labor. To treat his AFIB, his doctors recommend cardioversion, a procedure which Plaintiff understands to involve medication to control and slow his heart rate and electric shocks to his heart to restore rhythm. Neither party offered evidence to establish what the cardioversion procedure involves, the inherent risks and anticipated benefits, or the potential side effects. To explain why he has refused – and will continue to refuse – to undergo cardioversion, Plaintiff testified about what he believes are the risks and side effects, based on his discussions with his doctors and his own independent research.

Plaintiff also testified about the cognitive and psychological problems he has experienced over the years and the way he believes they impede his ability to maintain employment. He has not been diagnosed with a brain disease. However, he believes the repeated, self-inflicted head injuries he suffered in his youth either caused or contributed to the severe aggression, depression, and suicidal ideation he has experienced throughout his adult life. He has been treated for these problems, but they are ongoing, and he often cannot function at a level that enables him to maintain a job.

## Jurisdiction

The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334, 157(b)(1), and 157(b)(2)(I).

## Applicable Law

Under § 523(a)(8), educational loans made, insured or guaranteed by a governmental unit are dischargeable in bankruptcy if "excepting such debt from discharge . . . would impose an

---

[2] At the parties' request, I temporarily abated this proceeding to give Defendant time to evaluate Plaintiff's health as part of its independent assessment of whether it would administratively discharge his debt because of a total permanent disability. The Department ultimately denied the request, but it offers as evidence in this proceeding the Medical Report (Exhibit F) it generated as part of its disability assessment. Plaintiff did not object to admission of the Report. Defendant concedes that the evaluation contained within the Report was created for the purpose of Defendant's disability assessment and not for a determination under § 523(a)(8).

undue hardship on the debtor and the debtor's dependents." Defendant has the initial burden to establish that the debt is an educational loan within the parameters of the statute. *Roth v. Educ. Credit Mgmt. Corp. (In re Roth)*, 490 B.R. 908, 916 (9th Cir. BAP 2013). Because the parties agree that Plaintiff's debt to Defendant qualifies as an educational loan under § 523(a)(8)(A), the burden of proof shifts to Plaintiff to prove that repayment of the loans would impose an undue hardship. *Nys v. Educ. Credit Mgmt. Corp. (In re Nys)*, 308 B.R. 436, 441 (9th Cir. BAP 2004), *aff'd on other grounds*, 446 F.3d 938 (9th Cir. 2006).

In *United Student Aid Funds v. Pena (In re Pena)*, 155 F.3d 1108, 1112 (9th Cir. 1998), the Ninth Circuit adopted the so-called *Brunner* test to determine whether the undue hardship standard is met. *See Brunner v. N.Y. State Higher Educ. Servs. Corp. (In re Brunner)*, 831 F.2d 395 (2d Cir. 1987), *aff'g and adopting* 46 B.R. 752 (S.D.N.Y. 1985). Under *Brunner*, Plaintiff must establish the following:

> (1) that the debtor cannot maintain, based on current income and expenses, a 'minimal' standard of living for herself and her dependents *if forced to repay* the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

831 F.2d at 396 (emphasis added). Regarding the first prong, "the test is whether it would be unconscionable to require the debtor to take steps to earn more income or reduce her expenses in order to make payments." *Cardnuff v. U.S. Dept. of Educ. (In re Cardnuff)*, 367 B.R. 120, 127 (9th Cir. BAP 2007) (citations omitted).

As to the second prong, "neither *Brunner* nor *Pena* imposes a requirement that additional circumstances be 'exceptional' in the sense that the debtor must prove a serious illness, psychiatric problems, disability of a dependent, or *something* which makes the debtor's circumstances more compelling than that of an ordinary person in debt." *Nys*, 446 F.3d at 946 (internal quotations omitted; emphasis in original). "[T]he determinative question is whether the debtor's inability to pay will, given all we know about the salient features of her existence, persist throughout a substantial portion of the loan's repayment period." *Id*. The bankruptcy court may consider numerous factors, including "[s]erious mental or physical disability . . .

which prevents employment or advancement; . . . [l]imited number of years remaining in [her] work life to allow payment of the loan; [and] [a]ge or other factors that prevent retraining or relocation as a means for payment . . . ." *Id. at* 947 (citation omitted).

Finally, for the third prong,

> good faith is measured by the debtor's efforts to obtain employment, maximize income, and minimize expenses. Courts will also consider a debtor's effort – or lack thereof – to negotiate a repayment plan, although a history of making or not making payments is, by itself, not dispositive.

*Educ. Credit Mgmt. Corp. v. Mason (In re Mason)*, 464 F.3d 878, 884 (9th Cir. 2006) (internal citations omitted). "[L]ack of even minimal voluntary payments is not lack of good faith if the debtor did not have the financial wherewithal to make them." *Roth*, 490 B.R. at 918.

Analysis

Applying *Brunner*, I first ask whether Plaintiff would be able to maintain a minimal standard of living if forced to repay the debt given his current income and expenses. Defendant does not dispute the accuracy of the income and expense amounts Plaintiff outlined in his bankruptcy paperwork and testimony. His household historical income for the last several years roughly tracks with the Federal poverty levels for each year, save for 2017 when it was considerably lower. Plaintiff's current income of $3,020 per month – or $36,240 per year – is higher than the $25,750 poverty guideline for a household of 4. No rule mandates, however, that a person seeking to discharge a student loan must have income that falls below the poverty guidelines. *Educ. Credit Mgmt. Corp. v. Howe (In re Howe)*, 319 B.R. 886, 889 (9th Cir. BAP 2005). While a "minimal standard of living under § 523(a)(8) does not equate to a middle class standard of living," it must be determined "in light of the particular facts of each case." *Id*. at 889-90.

With income of $3,020 and expenses of $3,320, Plaintiff has a net $300 deficit each month. As is, he cannot afford to make any payments on the debt to Defendant. I have reviewed his itemized list of household expenses and find that they are all reasonable and necessary to support himself and his family. It would be unconscionable to require him to reduce them to make payments on the student loan. Further, for reasons outlined below in my discussion of the

second *Brunner* prong, I hold that it would be unconscionable to require Plaintiff to take steps to earn more income.

Defendant argues that, under Plaintiff's IBRP, he is not required to make any payments and, as such, continuation under that plan would not impose an undue hardship on him. Defendant's argument misreads the relevant standard. Under *Brunner*, I must determine whether Plaintiff could maintain a minimal standard of living "if *forced to repay*" the debt. "Repay" assumes payment. Although the "payments" due under the IBRP are zero, this is not repayment as contemplated by *Brunner*. Where Plaintiff lives with a monthly budget deficit, requiring him to make additional payments of any amount would further compromise his ability to meet his family's basic needs. Were I to rule that debtors enrolled in IBRPs with zero payments due could not, as a matter of law, satisfy the first *Brunner* prong, that would essentially deny otherwise qualifying debtors of the right to discharge their student loans. It would also discourage, albeit indirectly, borrowers from signing up for income-based or similar repayment plans offered by Defendant.

Turning to the second *Brunner* prong, Debtor argues that his AFIB and mental health problems inhibit his ability to work and are likely to persist for a significant portion of the repayment period. Defendant does not dispute the AFIB and depression diagnoses. Plaintiff, however, carries the burden of proof, and he offers no evidence beyond his own testimony regarding how his physical and mental health problems prevent him from maintaining employment and that they are likely to persist into the future.

The applicable evidentiary standard determines whether Plaintiff has met his burden on the second prong. The *Mosley* case out of the Eleventh Circuit parallels this case and provides some guidance. *Educ. Credit Mgmt. Corp. v. Mosley (In re Mosley)*, 494 F.3d 1320 (11th Cir. 2007). In *Mosley*, the pro se debtor suffered from depression, anxiety, hypertension, and chronic back pain. *Id*. at 1323. The debtor received treatment at a hospital for his psychological and medical issues, but he was unable to work, consistently earning less than $7,700 per year. *Id*. At trial, the debtor testified and provided a letter from a VA doctor outlining his diagnoses, but the court excluded additional evidence because it could not be authenticated. *Id*. at 1324.

Nevertheless, the bankruptcy court discharged the student loans "reasoning that [the debtor's] testimony that he was in a vicious cycle of illness and homelessness that prevented him from working was credible and demonstrated that repayment would be an undue hardship." *Id*.

On appeal, the Eleventh Circuit "decline[d] to adopt a rule requiring [the debtor] to submit independent medical evidence to corroborate his testimony that his depression and back problems were additional circumstances likely to render him unable to repay his student loans." *Id*. at 1325.

> [R]equiring corroborating evidence when the debtor cannot afford expert testimony or documentation 'imposes an unnecessary and undue burden on [him] in establishing his burden of proof.' . . . [T]he crucial requirement is that the debtor show how his medical conditions prevent him from working, and this can be accomplished by an array of evidence, including the debtor's credible testimony.

*Id*. at 1325 (citing *Barrett v. Educ. Credit Mgmt. Corp. (In re Barrett)*, 487 F.3d 353, 360-61 (6th Cir. 2007)). *Mosley* is consistent with the Third Circuit's ruling that it is appropriate for the bankruptcy court to assess a debtor's testimony regarding her emotional and psychiatric infirmities and draw reasonable conclusions regarding her mental and emotional state. *Brightful v. Pa. Higher Educ. Assistance Agency (In re Brightful)*, 267 F.3d 324, 330-31 (3d Cir. 2001). The Ninth Circuit ruled in *Mason* that a bankruptcy court may rely on a debtor's testimony in finding that he has a learning disability, and that the disability diminished his employment prospects and "impaired his ability to earn a sufficient income now and in the future." *Mason*, 464 F.3d at 883.

In our case, Plaintiff provided testimony regarding his work history and previous attempts to obtain and maintain employment in a myriad of fields. He discussed his AFIB symptoms and the problems he has experienced with elevated heart rates when doing carpentry and similar work. He has sought work not requiring manual labor, but he has had minimal success in that regard. Where the bulk of his work experience is in carpentry and physical labor, compared to other applicants for non-labor jobs, he is at a relative disadvantage. Plaintiff also testified about his history of aggression and depressive disorder, the treatments he has undergone, and how his mental health problems continue to inhibit his ability to maintain

productive work relationships. I find his testimony credible and that his medical and psychological problems are likely to persist throughout a substantial portion of the IBRP repayment period. Moreover, at 58-years-old with his physical limitations, Plaintiff is nearing the end of his work life (compared to the 24 years remaining on the IBRP). His age, along with his dependent children living at home and his wife having an established Pilates business in the area, all limit his ability to retrain or relocate. For these reasons, I conclude that Plaintiff has satisfied the second prong under *Brunner*.

Defendant argues that Plaintiff cannot satisfy the second *Brunner* prong because he refuses to undergo cardioversion and that such treatment "may well improve" his AFIB. Def. U.S. Dept. of Educ. Trial Br. 5 (Doc. #40). Defendant also argues that Plaintiff's refusal to undergo cardioversion is motivated primarily by this proceeding and that he will likely pursue the treatment in the future. Defendant, however, does not dispute the seriousness of Plaintiff's current condition, nor is there any reason to believe it will improve on its own.

As noted above, neither party offered expert testimony or other evidence of similar caliber regarding the cardioversion procedure, the likelihood of its success, how it could improve Plaintiff's ability to work, the inherent risks, or the possible side effects. This leaves me with only Plaintiff's testimony to assess the significance and sincerity of his refusal to undergo the procedure. Considering all the relevant factors, including his diagnosed anxiety disorder and his testimony regarding his concerns about the procedure, I conclude that Plaintiff's refusal of treatment was not done in bad faith and does not change my findings about the second prong.

Although Plaintiff may decide to undergo cardioversion in the future, with the facts specific to this case, his good faith refusal is not a basis for ruling against him. The caselaw does not require a debtor to exhaust all treatment options before discharging a student loan because of an established illness or disability. Plaintiff has a "serious illness," making his "circumstances more compelling than that of an ordinary person in debt" and rendering his undisputed current inability to pay likely to "persist throughout a substantial portion of the loan's repayment period." *Nys*, 446 F.3d at 946. This determination would ordinarily conclude the analysis. But even so, the Ninth Circuit directs that a "debtor cannot purposely choose to live a lifestyle that

Page 9 of 12 – OPINION

Case 17-06086-tmr    Doc 47    Filed 09/17/19

prevents her from repaying her student loans. Thus, the debtor cannot have a reasonable opportunity to improve her financial situation, yet choose not to do so." *Id*. While one might argue that the Ninth Circuit's discussion regarding a "lifestyle" choice should extend to the physical or mental illness context (i.e., one could choose to not be ill by choosing to seek treatment), the analogy does not hold in this case. One does not choose a heart condition like one chooses a lifestyle. Nor will I rule that "a reasonable opportunity to improve [Plaintiff's] financial situation" requires Plaintiff to undergo an invasive medical treatment where the likelihood of success is unknown and the risks and side effects could be significant. Moreover, as outlined above, Plaintiff's AFIB is only one of several factors contributing to my determination that he has satisfied the second *Brunner* prong.

Under the third and final *Brunner* prong, Plaintiff argues that he made good faith efforts over the years to obtain employment and repay the debt to Defendant. Defendant argues that he could have made payments, but didn't, and that Plaintiff's payment of only $5.76 toward the debt in the 38 years since he incurred it shows a lack of good faith. Plaintiff testified that, since 1984, he held over 100 jobs, but quit all of them. He discussed how his aggression, exaggerated negative thoughts, and depression influenced his decisions to leave most of those jobs. He also testified that, although he and his wife were "always living month-to-month," there were periods of time when he was able to make occasional, small payments toward the credit card debt they incurred.

While some of these factors cut against a finding of good faith, I conclude that Plaintiff nevertheless satisfies the good faith requirement, primarily because of his continued negotiations with Defendant and participation in various income-based and forbearance programs over the last 38 years. Plaintiff did not ignore the debt, and he was never in default. Further, in consenting to and regularly reviewing each of Plaintiff's income-based repayment or forbearance plans, Defendant determined that Plaintiff's income and other financial circumstances warranted his participation in each such plan. Defendant cannot first say that Plaintiff's income was low enough to excuse him from making payments, then argue that he should have made payments anyway and his failure to do so shows a lack of good faith. There is no basis under *Brunner* for

Page 10 of 12 – OPINION

Case 17-06086-tmr    Doc 47    Filed 09/17/19

punishing Plaintiff for taking advantage of the programs the government offered. Defendant does not say, nor do I have reason to conclude, that Plaintiff ever misrepresented his income to Defendant or otherwise abused the various repayment options provided by Defendant. Although he made occasional payments to other creditors over the years, the payments were small and sporadic enough as to be irrelevant to the present analysis.

Also contributing to my conclusion is Plaintiff's effort to obtain employment over the years, notwithstanding his failure to maintain or be successful at it. His testimony illustrates the range of work he sought and his willingness to pursue unique avenues for income. I find that his aggression and other mental health problems contributed to his inability to sustain employment after obtaining it. For these and the above reasons, I hold that Plaintiff has shown the requisite amount of good faith in his efforts to repay the loans.

Perhaps as an extension of its good faith argument or as a separate basis for denial of Plaintiff's discharge request, Defendant argues that discharging this debt would make Plaintiff eligible for Parent Plus Loans for his children under the applicable regulations.[3] Defendant expressed concern that Plaintiff would incur such loans without the intent or ability to repay them. This concern is not without merit. I agree with Defendant that I do not have the ability to prevent Plaintiff from applying for a Parent Plus Loan. The prospect of Plaintiff's future indebtedness, however, is not a basis for me to deny his student loan discharge request when he is otherwise entitled to it. The task of determining eligibility standards for student assistance loans rests with the other branches of government. It is not for me to compensate for any unintended gaps in the intersection of the Bankruptcy Code and student financial assistance regulations.

## Conclusion

For the above reasons, I hold that excepting Plaintiff's student loan debt from discharge would impose an undue hardship on Plaintiff and his dependents under § 523(a)(8). He is

---

[3] *See, generally*, 34 C.F.R. § 668.

therefore entitled to discharge his debt to Defendant. I will enter a judgment to that effect. This Opinion constitutes my findings of facts and conclusions of law under Fed. R. Bankr. P. 7052.